IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VONDRE DEMOND CASH,<br>ID # 1149384,<br>Petitioner,<br>vs.<br><br>NATHANIEL QUARTERMAN, Director,<br>Texas Department of Criminal<br>Justice, Correctional Institutions Division,<br>Respondent. | )<br>)<br>)<br>)    No. 3:07-CV-0250-K (BH)<br>)    ECF<br>)    Referred to U.S. Magistrate Judge<br>)<br>)<br>)<br>) |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

**A. Nature of the Case**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a February 7, 2003, conviction for serious bodily injury to a child in Cause No. F02-47643-V. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural and Factual History**

On March 15, 2002, the State indicted petitioner for intentionally and knowingly causing injury to a child under fourteen years of age. (Transcript at 2-3). After petitioner pled not guilty to the charged offense, on February 5-7, 2003, he was tried before a jury, found guilty, and sentenced to forty-five years. *Id.* at 4, 45.

The state appellate court recounted the evidence presented at trial as follows:

> On January 30, 2002, appellant stayed at home with his two children, a one-year-old boy and a baby. When appellant's wife returned home from work, she discovered the baby was injured. Appellant said the one-year-old had crawled on the baby and kicked him. The baby was taken to the hospital where it was determined the baby had injuries consistent with being shaken or subjected to significant force. Appellant signed a voluntary statement that he picked the baby up too harshly and "had shook the baby a few moments." Appellant was charged with injury to a child. At trial, appellant testified he knew what shaken baby syndrome was and knew that he picked up the baby up and "just grabbed him and just jerked him up" without supporting his head. Appellant testified that he knew there was a risk that by picking the baby up and not supporting his head and shaking him he could cause injury to him. However, appellant testified he shook the baby anyway. Nevertheless, appellant testified he did not shake the baby in order to hurt him, cause shaken baby syndrome, or cause serious bodily injury
>
> \* \* \*
>
> Robert Glatz, a medical doctor employed in the emergency room at Methodist Medical Center of Dallas, testified that he was on duty when J.C. was brought in. J.C. "looked like his left eye was about to pop out," and he also had some swelling in his right eye. J.C.'s pupils were dilated and were not reactive, and he had some retinal hemorrhages that indicated he had been shaken. J.C. had a tube placed in his trachea to help him breathe. Glatz x-rayed J.C.'s chest and discovered what appeared to be rib fractures, some of which appeared to have done some healing. Because Glatz saw that J.C.'s injuries needed more care, possibly in an intensive care unit, he referred J.C. to Children's Medical Center.
>
> Janet Squires, director of the general pediatric division of Children's Medical Center, testified she had reviewed J.C.'s medical records and x-rays. Of twenty-four ribs, twenty-one were broken, some of them in multiple places, some of the fractures were old and some were healing and some were new. J.C. also had at least four other fractures, including a broken right femur, a fracture to the right upper arm just below the shoulder, a broken radius and ulna in his left arm. Squires described the fractures as growth plate fractures caused when

> a baby is shaken. Although J.C. had no skull fractures, he had massive brain injury and brain swelling. Beneath the dura, the membrane on top of the brain, there was some fresh blood and some old clotted blood. Squires also testified that J.C.'s retinal hemorrhages were "very, very, very strongly indicative of shaking injury to a baby."
>
> Squires testified that, on the day he presented with his fresh injuries, he had closed-head trauma, and the cause had to involve "very significant shaking." Squires testified J.C.'s injuries could not have been caused by just picking him up without supporting his head or just jerking him up or just dropping him about two feet onto a mattress. According to Squires, the types of injuries J.C. had required very violent, vigorous shaking.

*Cash v. State*, No. 05-03-00260-CR (Tex. App.–Dallas, July 24, 2004, pet. ref'd).

Petitioner filed an appeal challenging the legal and factual sufficiency of the evidence and alleging that the trial court committed reversible error by failing to administer the oath to a State's witness. The Fifth District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Id.* On March 2, 2006, petitioner filed a state application for writ of habeas corpus in which he alleged that his trial counsel provided ineffective assistance of counsel. (State Habeas Transcript at 2, 7). The Court of Criminal Appeals denied petitioner's state application without written order on the findings of the trial court without an evidentiary hearing. (S.H.Tr.:cover).

On February 2, 2007, petitioner filed the instant petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent filed an answer on July 25, 2007, (*see* Answer) and provided the state-court records. Petitioner filed a reply to that motion on August 20, 2007. (*See* Pet. Cash's Rebuttal and Response to State Answer [hereinafter Reply]).

3

C.  **Substantive Issues**

Petitioner asserts that: (1) his trial counsel provided ineffective assistance of counsel; and (2) there is insufficient evidence to support his conviction for injury to a child. (Pet. at 7). Petitioner also requests an evidentiary hearing.

D.  **Exhaustion**

Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's direct appeal and his state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir.

5

2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

These AEDPA standards apply to petitioner's various claims.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first claim, petitioner asserts that he received ineffective assistance of counsel at trial because defense counsel failed to investigate and have a "firm command" of the facts and law surrounding the case. (Mem. at 5). In particular, petitioner contends that his trial counsel was not aware that the primary issue at trial was the requisite mental state and did not present sufficient evidence on this issue. Petitioner further contends that counsel was ineffective for failing to present evidence that petitioner suffered from a "shift work sleep disorder" because he worked the night shift and cared for his two children during the day, that counsel should have presented the affirmative defense of "automatism" and called an expert witness to testify on this issue, and that counsel should have called a defense expert to testify regarding the medical records submitted by the State at trial.

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he

6

reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

### A. State Findings

At the state habeas level, petitioner's trial attorney, John Nation, submitted an affidavit. In this affidavit, Mr. Nation states that petitioner never informed him that he suffered from automatism at the time of the offense; he never informed Nation that he was in a state of unconsciousness or semi-consciousness when he shook his infant child. Nation further states that petitioner never testified to being in such a state, as he testified that he shook his child after jerking him up, knowing that there was a risk in doing so, and petitioner further testified that he "lost it" because the baby would not stop crying. (S.H.Tr.:314). Nation further states that, had petitioner informed him that he was in such a state, he would have investigated the issue, but that petitioner's defense at trial was that he did not intent to hurt the baby. (S.H.Tr.:314). Finally, Nation states that he fully investigated the case, filed pre-trial motions, read through hundreds of pages of medical records, discussed the case with petitioner, presented the defense of lack of intent, and made appropriate objections and arguments

at trial. (S.H.Tr.:314-15).

At the state habeas level, the trial court found that John Nation is a trustworthy person, that petitioner failed to advise Nation that he suffered from automatism or any other type of mental illness, and that petitioner's trial testimony contradicts his assertion that he suffered from such an ailment because he admitted to shaking the child at trial. (S.H.Tr.:310-11). Accordingly, the court found that Mr. Nation was not ineffective for failing to call an expert to testify on this issue at trial. The court further found that Mr. Nation investigated the case prior to trial and effectively cross-examined the State's witnesses. The state habeas court then found that petitioner received effective assistance of counsel at trial. (S.H.Tr.:311). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. (S.H.Tr.:cover). This is not an unreasonable application of the *Strickland* standard.

**B.      Investigation and Command of Issues**

As support for his assertion that his attorney was not aware that petitioner's mental state was at issue at trial, petitioner points to a pre-trial hearing that was conducted in which he raised concerns about his attorney and the fact that his attorney had told him that expert witnesses would not "do any good," and his attorney responded that he did not know what defenses petitioner spoke of, but that petitioner had signed two statements in which he admitted injuring his child, and counsel had recommended that petitioner make an open plea of guilty to the jury. (R. 2:3-6). This pre-trial hearing, however, is not evidence that counsel was unaware that petitioner wished to contest his mental state at the time of the offense. In fact, during cross-examination of the mother of the child, defense counsel asked whether she believed that petitioner had intentionally harmed their child, and she said

8

no, that she believed that it was a horrible mistake. (R. 3:60-61). During cross-examination by counsel, the detective who took two written statements from petitioner acknowledged that he overheard petitioner tell the mother over the telephone that it was no excuse, but he was tired and did not mean to do it. (R. 3:129). Finally, during petitioner's direct examination, counsel elicited testimony from petitioner that he did not shake the baby in order to hurt him, he did not intend to cause shaken baby syndrome, he did not shake him violently, he knew about the risk of shaking a baby, and he shook him for a short period of time. (R. 4:26-28). Moreover, defense counsel requested, and was granted, a jury instruction on the lesser-included offense of recklessly causing serious bodily injury to a child, and counsel argued during closing statements that petitioner was guilty of recklessly injuring his child rather than intentionally or knowingly doing so. (R. 4:56, 62-5; Tr.:28, 30-31). Therefore, the record of the trial indicates that counsel was well aware that petitioner's mental state at the time of the offense was the primary issue at trial and that counsel therefore placed into evidence testimony on this issue and made this issue the crux of his closing statement. Trial counsel was not ineffective for failing to have a firm command of the facts and law on the issue of petitioner's mental state at the time of trial.

C. **Expert Witnesses**

Petitioner alleges that counsel should have had an expert testify on the subject of "automatism" and should have had an expert testify in response to the State's medical experts and medical records. The first expert would address the issue of petitioner's mental state, and the second expert would address the issue of the force necessary to cause the injuries that the child received.

The Texas Court of Criminal Appeals has recognized the defense of "automatism" as being

9

a defense that is related to, but different from, insanity. In essence, "automatism" is the defense that one was unconscious or semi-conscious at the time of the offense is therefore not guilty of criminal conduct because one either did not have the requisite intent or did not engage in a voluntary act. *See Mendenhall v. State*, 77 S.W.3d 815, 818 n. 4 (Tex. Crim. App. 2002). Texas courts have also recognized that such a state might be brought on by epilepsy, sleep-walking, hypnosis, concussion, or some physical or emotional trauma. *See Peavey v. State*, 248 S.W.3d 455, 465 n. 8 (Tex. App.-Austin 2008, pet. ref'd). However, under Texas law, a defendant would not be entitled to a special jury instruction on automatism. Rather, a defendant could either argue that he lacked the requisite criminal intent due to a state of unconsciousness or semi-consciousness or, more effectively, admit to committing the act, but argue that he did not commit the act voluntarily and request an instruction on voluntariness. *Id.* at 465-66; *Nelson v. State*, 149 S.W.3d 206, 211-12 (Tex. App.-Fort Worth 2004, no pet.).

Petitioner argues that his attorney should have had an expert testify on the issue of "automatism" because he was in a semi-conscious state; he worked the night-shift at a local grocery store and had therefore not slept before he began caring for his children on the day of the offense and on previous offenses. However, the record reflects that petitioner never informed trial counsel that he was in such a semi-conscious state. Moreover, he never testified that he was in such a condition. While petitioner testified that he was tired, had awakened from a nap to the sound of the victim crying, and was groggy for a period of time, he was quite specific in his testimony regarding what occurred. He acknowledged that he "jerked" the baby up without supporting his head, shook him for a period of time, and dropped him on a mattress from knee-level. (R. 4:23-28). Petitioner also

10

handwrote two statements during the investigation of the offense that were admitted and read into evidence at trial, in which he gave specific details as to what occurred that day. (R. 3:108-110, 116-120). Therefore, nothing in the record indicates that trial counsel knew, or should have known, that there was a defense available that petitioner was either unconscious or semi-conscious at the time of the offense such that he did not voluntarily commit the actions that caused the injury. Moreover, given petitioner's testimony and his written statements in which he admitted shaking the baby, as well as the testimony given by the State's medical experts that the severe injuries the victim received were as a result of a violent, vigorous, non-accidental shaking (R. 3:72, 91, 94, 139, 142), petitioner has not shown any prejudice because he has not shown that, had such an expert testified, there is a reasonable probability that the jury would have found him not guilty of the offense.

With regard to petitioner's assertion that his trial counsel was ineffective for failing to have an expert testify in response to the State's medical expert testimony and the medical records regarding the victim that were entered into evidence at trial, petitioner contends that such testimony was warranted because a key issue at trial was the force necessary to cause the severe head injury and numerous broken bones sustained by the victim. Petitioner testified at trial that he did not shake the baby violently and that when he first awoke to the baby crying that day, he saw his one-year-old son on top of the baby and believed that the older child had kicked the baby. (R. 4:24-25, 26-28). As noted earlier, the State's medical experts who treated the victim and viewed his medical records testified that his injuries occurred because of a violent shaking episode, not from a short shaking, being picked without supporting his head, and not from being dropped onto a mattress from knee-level. Furthermore, the testimony by these medical experts was that such injuries could not have been

caused by a one-year-old child (R. 3:83, 97). Petitioner has presented no evidence regarding what testimony he believes a defense expert would testify to and has presented no evidence that any medical expert exists who would testify contrary to the testimony given by the State's experts. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Instead, the record before this trial is that several doctors examined the victim at different times and came to the conclusion that he was rendered virtually brain-dead due to being violently shaken. Trial counsel reviewed all of these records and presented the defense that petitioner did not intentionally or knowingly injure his child. *Strickland* requires counsel to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. As petitioner has not shown that there was any medical expert testimony available that trial counsel either knew of or should have known of that would contradict the State's experts, petitioner has not established that counsel was ineffective in this regard.

For the above-stated reasons, petitioner's claim of ineffective assistance of counsel entitle him to no habeas relief.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second claim, petitioner asserts that there is no evidence or insufficient evidence to support his conviction. (Pet. at 7). In particular, he claims that there is insufficient evidence that he acted either intentionally or knowingly in causing injury to his child.

12

A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence. *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002) (noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence), *vacated on other grounds*, 541 U.S. 386 (2004); *United States v. Jackson*, 86 Fed. App'x 722, 722 (5th Cir. 2004) (per curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence"). In *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* Moreover, a federal habeas court should not substitute its view of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

On direct appeal, after identifying the *Jackson v. Virginia* standard, the Fifth District Court held that the evidence was legally sufficient to support petitioner's conviction because, although there was conflicting evidence, there was testimony before the jury from the doctors that treated the victim that the injuries were caused by repeated and violent shaking, and the jury was free to disbelieve petitioner's testimony regarding his actions towards the baby. *Cash v. State*, slip op. at 4-5. This is not an unreasonable application of the *Jackson* standard.

Petitioner argues that the evidence at trial only showed that he was aware that circumstances existed that would cause injury to a child, but that there was no evidence that it was either his

13

conscious desire to cause the injury or that he was aware that his conduct was reasonably certain to cause the injury. Petitioner further contends that because the State offered no eyewitness testimony but only medical testimony in support of the jury's verdict that he intentionally or knowingly injured his child, and petitioner denied that he ever intended to hurt his child but that he was just waking up, was fatigued, and did not remember shaking the child to the point of causing injury, the evidence is legally insufficient to support the guilty verdict.

Contrary to petitioner's argument, under the *Jackson* standard, the jury had the responsibility of weighing the evidence presented and resolving conflicts in testimony, and the jury was free to disbelieve his testimony that he did not shake the baby vigorously. It was free to believe the medical experts that the victim's severe head injury and numerous broken bones, including numerous broken ribs, could only have been caused by a vigorous and violent shaking. Moreover, petitioner testified that he was aware of the danger in shaking a baby and was aware of shaken baby syndrome. Under Texas law, a person acts intentionally with respect to the result of his conduct when it is his conscious desire to engage in the conduct or cause the result, and he acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PEN. CODE ANN. § 6.03(a) & (b) (Vernon 1993). The jury was charged accordingly, and the State argued that the evidence had shown, at the very least, that petitioner knew that his actions were reasonably certain to cause serious bodily injury to his child. (Tr.: 27-28; R. 4:57, 69-71). When the evidence is viewed in the light most favorable to the prosecution, as required under the *Jackson* standard, any rational trier of fact could have found the essential elements of injury of a child based on the testimony of the four doctors who testified for the State regarding the extent of the victim's injuries.

Accordingly, petitioner's claim entitles him to no habeas relief.

## V. STATE CONSIDERATION OF CLAIMS

Petitioner raised his first claim in his state writ and his second claim on direct appeal. The Fifth District Court of Appeals affirmed his conviction on appeal, and the Court of Criminal Appeals denied the state writ on the findings of the trial court, and thus petitioner's claims were adjudicated on the merits. These decisions at the state level are consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## VI. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

SIGNED on this 27th day of January, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

  The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE